T.C. Memo. 2015-240

UNITED STATES TAX COURT

CLARENCE MCDONALD LELAND, JR., AND MYNA GREEN LELAND,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17625-13.                    Filed December 14, 2015.

Clarence McDonald Leland, Jr., and Myna Green Leland, pro sese.

Edwin B. Cleverdon and Horace Crump, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge: By notice of deficiency dated April 30, 2013, respondent determined deficiencies of $5,066 and $10,244 in petitioners' 2009 and 2010 Federal income tax, respectively, and accuracy-related penalties of $1,013 and

[*2] $2,049 for tax years 2009 and 2010, respectively, under section 6662(a).[1]

The issues for decision are whether (1) the passive activity loss rules under section 469 limit petitioners' loss deductions for tax years 2009 and 2010, and (2) whether petitioners are liable for accuracy-related penalties pursuant to section 6662(a).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Mississippi at the time they filed their petition. References to petitioner in the singular are to Clarence McDonald Leland, Jr.

Petitioner is an attorney practicing in the Jackson, Mississippi, metropolitan area. Petitioner is also trained as an electrical engineer. In 2004 petitioner purchased a 1,276-acre farm in Turkey, Texas. In 2005 petitioner entered into a crop share arrangement with Clinton Pigg, a farmer local to Turkey. In accordance with their arrangement, Mr. Pigg has complete responsibility for planting and harvesting crops, and petitioner has complete responsibility for maintaining the infrastructure of the farm.

Of the 1,276 acres, approximately 130 are irrigated and are used by Mr. Pigg for planting and harvesting crops. In 2009 Mr. Pigg spent six hours planting

---

[1] All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] cotton on 120 acres. Before and after planting, he spent a total of three hours spraying the cotton field over the course of two sprayings. Mr. Pigg checked on the farm weekly over the course of 3.5 months, spending approximately 15-20 minutes at the farm each time. It took Mr. Pigg 16 hours to harvest all of the cotton planted in 2009. In total, Mr. Pigg worked 29-30 hours on the farm in 2009. In 2010 Mr. Pigg sprayed and planted 60 acres, spending approximately four hours in total on both tasks. The cotton did not develop in 2010, and Mr. Pigg subsequently abandoned the crop. Petitioner and Mr. Pigg talked twice monthly during 2009 and 2010, but there is no evidence in the record as to the time spent on their conversations.

Maintaining the 1,276-acre farm requires petitioner to perform a lot of long, hard work. Petitioner performs most of these tasks himself, but he sometimes has assistance from his son or a friend, Steve Coke. Aside from petitioner, Mr. Pigg, Mr. Coke, and petitioners' son, no individuals perform any tasks on the farm. Petitioner visits the farm several times each year in order to perform necessary tasks, commuting approximately 13-16 hours each way, including the time it takes to load equipment onto his trailer. The farm has approximately 6-8 miles of perimeter roads and 18-20 miles of interior roads that must be bush hogged and disced regularly in order to remain passable. A Bush Hog is a device that is pulled

[*4] behind a tractor to cut vegetation and clear land. Discing involves churning and plowing soil to uproot any existing vegetation. Trees and brush that grow near the roads must be controlled through spraying and chopping down limbs that protrude onto the roadways. Because high winds can erode soil on the roads, wheat must be planted each fall to prevent erosion on the roads and on acreage that is not part of the 130 acres planted and harvested by Mr. Pigg. Almost all of the roads have fences running parallel that must be maintained.

Wild hogs are a continuing problem at the farm. They dig underneath fences to get to edible crops and have dug up and broken water lines on the farm. In a year before the tax years 2009 and 2010, wild hogs ate 250,000 pounds of peanuts that petitioner and Mr. Pigg had grown on the farm. As a result, petitioner has to spend significant time controlling the wild hog population, which he accomplishes through hunting and trapping. Petitioner usually hunts hogs for three hours each morning and afternoon while at the farm, for a total of six hours per day. In addition, he spends time building traps and baiting them with corn millet and Kool-Aid to lure hogs to a specific area, where he waits in a tripod stand with semiautomatic weapons in order to eradicate them.

Petitioner also must maintain farm equipment regularly. Parts on tractors, Bush Hogs, and water lines must be replaced. Tractor tires regularly go flat and

**[*5]** must be repaired or replaced. When petitioner visits the farm, he stays in a small travel trailer that also requires some maintenance. Each time petitioner leaves, he cleans the floor of the trailer and drains the water lines and adds antifreeze to prevent them from freezing. Additionally, petitioner keeps an old truck at the property; each time he leaves, he disconnects the batteries on the truck and on any tractors that remain at the farm.

Petitioner did not keep contemporary records of time he spent at the farm in 2009 and 2010. However, he reconstructed his records in preparation for trial by reference to a calendar he keeps at his law practice and credit card receipts and invoices for various purchases related to the farm activity. Petitioner provided logs to the Court detailing time spent working at the farm. Petitioner also credibly testified as to his activities at the farm, including the hours he spent each day on various tasks, such as hunting hogs and rebuilding roads. According to his records, petitioner spent 359.9 hours in 2009 and 209.5 hours in 2010 on farm-related activities.[2]

---

[2]The logs petitioner provided reflect that he spent 372.9 hours and 212.5 hours in 2009 and 2010, respectively, working on the farm. We have reduced the hours because of mathematical discrepancies and to subtract time petitioner listed for attending church in Turkey, Texas. Attending religious services is not part of the farming activity, and therefore any hours petitioner spent either traveling to or at church cannot count toward the hours spent materially participating in the

(continued...)

**[\*6]** Respondent mailed petitioners a notice of deficiency on April 30, 2013, that determined deficiencies of $5,066 and $10,244 in petitioners' 2009 and 2010 Federal income tax, respectively. The deficiencies were attributable to respondent's limiting loss deductions from the farming activity under section 469. Additionally, the notice of deficiency determined accuracy-related penalties of $1,013 and $2,049 for tax years 2009 and 2010, respectively, under section 6662(a).

## OPINION

### I.     Burden of Proof

In general, the Commissioner's determination as to the taxpayer's tax liability is presumed correct, and the taxpayer bears the burden of proving otherwise. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This burden may shift to the Commissioner if the taxpayer introduces credible evidence with respect to any relevant factual issue and meets other conditions, including maintaining required records. See sec. 7491(a). We decide this case on the preponderance of the evidence and accordingly need not address whether the

---

[2](...continued)
activity.

**[*7]** burden of proof has shifted.  See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

II.    Petitioner's Farming Activity

Section 469(a)(1) limits the deductibility of losses from certain passive activities of individual taxpayers.  Generally, a passive activity is any activity which involves the conduct of any trade or business and in which the taxpayer does not materially participate.  Sec. 469(c)(1).  A taxpayer is treated as materially participating in the activity only if the taxpayer is involved in the operations of the activity on a basis which is regular, continuous, and substantial.  Sec. 469(h)(1).

The regulations provide seven exclusive tests for material participation in an activity.  Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988).  An individual will be treated as materially participating in an activity for purposes of section 469 if and only if:  (1) the individual participates in the activity for more than 500 hours during such year; (2) the individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year; (3) the individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in

[*8] the activity of any other individual (including individuals who are not owners of interests in the activity) for such year; (4) the activity is a significant participation activity for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours; (5) the individual materially participated in the activity for any 5 taxable years (whether or not consecutive) during the 10 taxable years that immediately precede the taxable year; (6) the activity is a personal service activity, and the individual materially participated in the activity for any 3 taxable years (whether or not consecutive) preceding the taxable year; or (7) based on all of the facts and circumstances, the individual participates in the activity on a regular, continuous, and substantial basis during such year.  Id.

An individual may prove his or her participation in an activity by any reasonable means.  Id. para. (f)(4), 53 Fed. Reg. 5727.  Contemporaneous daily time reports, logs, or other similar documents are not required if the taxpayer is able to establish the extent of his participation by other reasonable means.  Id. Reasonable means may include, but are not limited to, the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or other narrative summaries.  Id.  The phrase "reasonable means" is

[*9] interpreted broadly, and temporary guidelines may not provide precise guidance. Goshorn v. Commissioner, T.C. Memo. 1993-578. However, a postevent "ballpark guesstimate" will not suffice. See Lee v. Commissioner, T.C. Memo. 2006-193; Goshorn v. Commissioner, T.C. Memo. 1993-578.

Petitioner's reconstructed logs, his receipts and invoices related to farm expenses, and his credible testimony are all reasonable means of calculating time spent on the farming activity during tax years 2009 and 2010. Petitioner's records and testimony establish that he spent 359.9 hours in 2009 and 209.5 hours in 2010 on farm-related activities.[3] As noted, a taxpayer is treated as having materially participated in an activity if the taxpayer participates in the activity for more than 100 hours during the taxable year and the taxpayer's participation in the activity for the taxable year is not less than the participation of any other individual. Sec.

---

[3]Respondent's main objection to petitioner's reconstructed logs was that they were not prepared contemporaneously with the activity. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), does not require contemporaneous records, and we are satisfied that petitioner has established material participation through other reasonable means. Respondent did not dispute petitioner's inclusion of travel time in his reconstructed logs. The facts of this case establish that petitioner's travel time was integral to the operation of the farming activity rather than incidental. See Shaw v. Commissioner, T.C. Memo. 2002-35. We are also satisfied that petitioner's purpose in traveling long distances to and from Turkey, Texas, was not to avoid the disallowance, under sec. 469 and the regulations thereunder, of any loss or credit from the farming activity. See sec. 1.469-5T(f)(2)(i), Temporary Income Tax Regs., supra.

**[*10]** 1.469-5T(a)(3), Temporary Income Tax Regs., <u>supra</u>. We are satisfied that petitioner's participation was not less than the participation of any other individual, including Mr. Pigg, Mr. Coke, and petitioners' son, during tax years 2009 and 2010. <u>See</u> <u>id.</u> Accordingly, petitioner materially participated in the farming activity during tax years 2009 and 2010, and the deductions attributable to that activity are not limited by section 469.

Because we rule for petitioners on the deductibility of their losses under section 469, we also find that they are not liable for the accuracy-related penalties pursuant to section 6662(a) for tax years 2009 and 2010.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.